1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10    DAJUAN JACKSON,

11              Plaintiff,                    No. 2:10-cv-3378 EFB P[1]

12         vs.

13    DUNHAM, et al.,
                                              ORDER AND
14              Defendants.                   FINDINGS AND RECOMMENDATIONS

15    _____/

16         Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17    U.S.C. § 1983.  Defendants move to dismiss and for summary judgment.  Dckt. Nos. 35, 38.  For

18    the reasons explained below, it is recommended that the motion to dismiss be granted, thereby

19    dismissing all defendants except defendant Dunham from this case.  It is further recommended

20    that defendant Dunham's motion for summary judgment be denied.

21    **I.      The Complaint**

22         This action proceeds on the verified complaint filed December 20, 2010.  Dckt. No. 1.  In

23    the complaint, plaintiff asserts that some defendants were deliberately indifferent to his serious

24

25         [1]Defendants failed to respond to the court's order filed on March 30, 2011, Docket No.
      10, directing them to complete and return the form indicating either consent to jurisdiction of the
26    magistrate judge or a request for reassignment to a district judge.  Accordingly, the clerk will be
      directed to randomly assign this case to a district judge

                                                  1

medical need for the psychiatric drug Wellbutrin and that, as a result of being denied Wellbutrin, plaintiff attempted "suicide by correctional peace officer," which resulted in the alleged exercise of excessive force by the remaining defendants. *Id.* at 7.[2]  Specifically, plaintiff alleges as follows.

Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation, and the allegations of the complaint concern events that occurred while plaintiff was housed at High Desert State Prison ("HDSP").  *Id.* at 5; Dckt. No. 41 at 22.  Defendant Dunham was a psychiatrist at HDSP.  Dckt. No. 1 at 5.  Defendant Krause was a psychologist there.  *Id.*  Defendants Kelly, Silva, Brown, and Hurd were HDSP correctional officers.  *Id.* at 5-6.  Defendant Stovall was a "CCMS Case Manager" at HDSP.  *Id.* at 6.

On October 22, 2009, defendant Dunham inexplicably discontinued plaintiff's prescription for the psychotropic medication Wellbutrin.  *Id.* at 7.  Plaintiff learned that his medication had been discontinued the next day when he went to take his medication in the "pill line" and was told by the nurse dispensing medications that she had nothing for him.  *Id.*  On October 25, defendant Stovall told plaintiff that he had been scheduled to see defendant Dunham on October 22nd, but plaintiff had never been told of the appointment.  *Id.* at 8.

Plaintiff complained "vociferously" to defendant Dunham that he was feeling suicidal.  *Id.*  Defendants Krause and Stovall were also aware that plaintiff was feeling suicidal.  *Id.*  Yet none placed plaintiff on suicide watch or sent him to the facility's Correctional Treatment Center.  *Id.*  Plaintiff's depression intensified and he heard voices, felt anxious, lost sleep, and became very agitated.  *Id.*

Plaintiff submitted a health care services request form and was seen by defendant Dunham on November 5, 2009.  *Id.* at 9.  At the appointment, defendant Dunham told plaintiff "that CDCR executives had told him not to put the plaintiff back" on Wellbutrin.  *Id.*  Defendant

---

[2] Page numbers cited herein refer to those assigned by the court's electronic docketing system and not those assigned by the parties.

Dunham tried to prescribe other medication for plaintiff (Effexor), but plaintiff had tried that medication in the past and suffered bad side effects and so plaintiff's psychiatrist at the time had discontinued it. *Id.* Plaintiff told defendant Dunham that Wellbutrin was the only psychiatric medication that had proven effective in treating plaintiff's mental illness. *Id.* Plaintiff also told defendant Dunham that he was feeling very depressed and felt like committing suicide. *Id.* Defendant Dunham became hostile and responded, "Oh well." *Id.* Defendant Dunham then called custody staff to take plaintiff back to his cell. *Id.*

During the escort, plaintiff told the officers that he felt suicidal. *Id.* at 9-10. Per procedure, the officers took plaintiff to a holding cage in the program office. *Id.* at 10. Fifteen minutes later, defendant Stovall arrived and spoke briefly with plaintiff. *Id.* Although defendant Stovall did not speak to plaintiff about his suicidal feelings, defendant Stovall informed custody staff that plaintiff was clear to return to his cell. *Id.* Several days earlier, plaintiff had had a hostile conversation with defendant Stovall due to his belief that defendant Stovall was not qualified or authorized to assess whether an inmate posed a risk of suicide. *Id.*

On December 12, 2009, plaintiff felt anxious, depressed, and suicidal, and was hearing voices caused by withdrawal from Wellbutrin. *Id.* at 11. He accidentally dropped his tray of breakfast food. *Id.* Defendant Hurd refused plaintiff's respectful request for a replacement tray. *Id.* Plaintiff weighs 226 pounds and has a voracious appetite. *Id.* Defendant Hurd's denial of his breakfast caused plaintiff to become increasingly agitated and begin to hear his deceased wife's voice, which told him, for over 15 minutes, to commit suicide so he could be with her. *Id.*

When defendant Hurd returned to plaintiff's cell to retrieve the food trays, plaintiff withheld his tray so he could talk to the sergeant about being denied breakfast. *Id.* Defendant Hurd urged plaintiff to give him the food tray, but plaintiff said he would hold the tray until he was fed or spoke with the sergeant. *Id.* at 11-12. Defendant Hurd called defendant Brown from the bottom tier and told him that plaintiff was holding the food tray hostage. *Id.* at 12.

////

3

1  Defendant Brown asked the tower officer to open plaintiff's cell door.  *Id.*  Plaintiff became

2  frightened as the cell door opened that he would be beaten or killed by the correctional officers.

3  *Id.*  In his delusional state, plaintiff concluded that the officers would be doing him a favor if

4  they killed him.  *Id.*

5      When defendant Brown tried to retrieve the food tray, "an altercation ensued; and in the

6  process of the plaintiff['s] attempted suicide by correctional peace officer," defendants Brown

7  and Hurd sprayed pepper spray into plaintiff's face "point blank."  *Id.*  Although plaintiff does

8  not remember all the details because everything happened so quickly, plaintiff alleges that he

9  was tackled and handcuffed by defendant Brown and placed in ankle restraints by Officer

10 Hutson.  *Id.* at 12-13.  The hand and ankle restraints were too tight, creating welt marks, cutting

11 off circulation, and breaking plaintiff's skin.  *Id.* at 13.  Defendants Brown, Hurd, Silva, and

12 Kelly, and Officer Hutson placed themselves on plaintiff's back, pressing their weight into his

13 body and causing plaintiff to lose consciousness.  *Id.*  When plaintiff regained consciousness, he

14 heard one of the defendants say he hoped plaintiff would choke and die from the pepper spray.

15 *Id.*

16      Although plaintiff had been subdued and restrained, defendants Kelly and Silva began to

17 kick plaintiff in the face; plaintiff's lip bled and plaintiff experienced extreme pain.  *Id.* at 13-14.

18 One of the defendants took plaintiff's shoes.  *Id.* at 14.  Plaintiff yelled that he couldn't breathe

19 and was dragged outside the building, where defendants Kelly and Silva threw plaintiff face-first

20 into the snow.  *Id.*  They then picked plaintiff up and forced him to jog bare-foot, in a crouching

21 position and ankle restraints, to the program office.  *Id.*

22      At the program office holding cage, plaintiff was forced to kneel, and a correctional

23 officer threw two 32 ounce cups of water at his back.  *Id.*  This was the sole attempt to

24 decontaminate plaintiff after he was sprayed with the pepper spray, and plaintiff felt painful

25 burning for the next several days.  *Id.* at 14-15.

26 ////

4

1    Later, plaintiff was taken to the Central Treatment Center at HDSP and seen by defendant

2    Krause. *Id.* at 16.  Plaintiff told defendant Krause that he had heard his wife's voice telling him

3    to commit suicide. *Id.* at 16-17.  Defendant Krause asked plaintiff if he was going to kill

4    himself, and plaintiff said, "Yes." *Id.* at 17.  Defendant Krause told plaintiff he would be alright

5    and just needed to go to a cell and get some rest. *Id.*  Plaintiff was taken to administrative

6    segregation and placed in a filthy cell with a wet mattress. *Id.*

7    At some point, a psychiatric technician came to plaintiff's cell and found him with a

8    noose he had made. *Id.*  Plaintiff told the technician he was going to kill himself and was

9    consequently taken to a holding cage and later "admitted to a crisis bed." *Id.*  Plaintiff learned

10   that defendant Krause had left a note stating that if plaintiff told staff he was suicidal, "he was to

11   be admitted to the rubber room; butt naked with no mattress or bedding." *Id.*

12   **II.    The Motion to Dismiss**

13           **A.    Standards Applicable to Motions to Dismiss for Failure to Exhaust**

14   The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

15   with respect to prison conditions [under section 1983 of this title] until such administrative

16   remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "Prison conditions" subject to

17   the exhaustion requirement have been defined broadly as "the effects of actions by government

18   officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2); *Smith v.*

19   *Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d

20   Cir. 2002).  To satisfy the exhaustion requirement, a grievance must alert prison officials to the

21   claims the plaintiff has included in the complaint, but need only provide the level of detail

22   required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v.*

23   *Nussle*, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials

24   "time and opportunity to address complaints internally before allowing the initiation of a federal

25   case").

26   ////

Prisoners who file grievances must use a form provided by the California Department of Corrections and Rehabilitation, which instructs the inmate to describe the problem and outline the action requested.  The grievance process, as defined by California regulations, has three levels of review to address an inmate's claims, subject to certain exceptions.  *See* Cal. Code Regs. tit. 15, § 3084.7.  Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims.  *Id.* § 3084.1(b).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]"  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  For a remedy to be "available," there must be the "possibility of some relief . . . ."  *Booth*, 532 U.S. at 738.  Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

In the Ninth Circuit, motions to dismiss for failure to exhaust administrative remedies are normally brought under Rule 12(b) of the Federal Rules of Civil Procedure.  *See Albino v. Baca*, 697 F.3d 1023, 1029 (9th Cir. 2012).  Nonetheless, it remains well established that credibility of witnesses over material factual disputes cannot be resolved on paper.  Thus, when ruling on an exhaustion motion requires the court to look beyond the pleadings in the context of disputed issues of fact, the court must do so under "a procedure closely analogous to summary judgment."  *Wyatt v. Terhune*, 315 F.3d 1108, 1119, n.14 (9th Cir. 2003).  Doing so ensures that a process is followed to test whether disputes over facts pertaining to whether plaintiff actually exhausted available remedies are truly genuine and material and therefore warrant live testimony, or whether the dispute(s) may be disposed of by unrefuted declarations and exhibits.  Therefore, following the suggestion in *Wyatt*, and because care must be taken not to resolve credibility on

1   paper if it pertains to disputed issues of fact that are material to the outcome, the undersigned

2   applies the Rule 56 standards to exhaustion motions that require consideration of materials

3   extrinsic to the complaint.[3]  *See Chatman v. Felker*, No. Civ. S-06-2912 LKK EFB, 2010 WL

4   3431806, at *2-3 (E.D. Cal. Aug. 31, 2010).

5          Failure to exhaust is an affirmative defense in the sense that defendants bear the burden

6   of proving plaintiff did not exhaust available remedies.  *Wyatt*, 315 F.3d at 1119.  To bear this

7   burden:

8          a defendant must demonstrate that pertinent relief remained available, whether at
           unexhausted levels of the grievance process or through awaiting the results of the
9          relief already granted as a result of that process. Relevant evidence in so
           demonstrating would include statutes, regulations, and other official directives
10         that explain the scope of the administrative review process; documentary or
           testimonial evidence from prison officials who administer the review process; and
11         information provided to the prisoner concerning the operation of the grievance
           procedure in this case . . . . With regard to the latter category of evidence,
12         information provided [to] the prisoner is pertinent because it informs our
           determination of whether relief was, as a practical matter, "available."
13

14   *Brown*, 422 F.3d at 936-37 (citations omitted).

15         Defendants' motion to dismiss included a notice to plaintiff informing him of the

16   requirements for opposing a motion to dismiss for failure to exhaust available administrative

17   remedies.  Dckt. No. 38 at 3-4; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Stratton v.*

18   *Buck*, 2012 U.S. App. LEXIS 19647, at *7-8 (9th Cir. Sept. 19, 2012); *Wyatt v. Terhune*, 315

19   F.3d 1108, 1115, 1120 n.15 (9th Cir. 2003).

20         **B.     Analysis**

21         Defendants argue that the sole properly-exhausted claim in plaintiff's complaint is that

22   against defendant Dunham.  Dckt. No. 38-1.  Defendants have submitted evidence that plaintiff

23   has not filed any appeal regarding the conduct of defendants Stovall, Krause, Hurd, Brown,

24

25         [3] Here, defendants rely on testimonial evidence in the form of declarations from three
     prison officials and a documentary record to establish the facts in support of their contention that
26   plaintiff failed to exhaust.

1   Silva, or Kelly.  *Id.*  Defendants' evidence reveals two relevant appeals.  First, in Appeal Log

2   No. HDSP-31-09-14276, plaintiff complained that defendant Dunham had abruptly discontinued

3   his Wellbutrin prescription.  Dckt. No. 38-4, Decl. of D. Frazier, Ex. B.  In indicating his

4   dissatisfaction with the response to the appeal at the informal level, plaintiff wrote, "Stovall

5   came to speak to me and cleared me to go back to my cell without asking me if I was suicidal

6   . . . .  Stovall isn't authorized to clear someone that's in a suicidal state of mind."  *Id.* at 14-15.

7   In indicating his dissatisfaction with the denial of that appeal at the first level and seeking further

8   review, plaintiff wrote on the appeal form that after he "attempted suicide by peace officer," he

9   was subjected to excessive force.  *Id.*  Plaintiff did not further describe that incident or identify

10  any officers, however.  *Id.*  In response to the allegations of staff misconduct contained in

11  plaintiff's responses to the earlier levels of review, the second level appeals reviewer informed

12  plaintiff that, to pursue complaints against staff, plaintiff must "follow the correct procedures"

13  rather than adding the allegations to an existing appeal.  *Id.* at 18.

14         Second, in Log No. HDSP-31-10-10283, plaintiff complained about the lack of adequate

15  medical care he perceived in response to "injuries I received from staff" on December 12, 2009.

16  *Id.*, Ex. C, at 35.  This appeal concerned solely plaintiff's complaints about his medical

17  treatment, however, and contained no allegation of excessive force by staff.  *Id.*

18         Plaintiff concedes that he did not file a grievance about the alleged misconduct of

19  defendants Hurd, Brown, Silva, or Kelly.  Dckt. No. 34.  Plaintiff argues that he exhausted his

20  administrative remedies by participating in a "use of force" video interview regarding the

21  incident.  *Id.*  According to plaintiff, because he alleged in the interview that the force used was

22  excessive and thereby launched an investigation into defendants' use of force, he put prison

23  authorities on notice of his claims against defendants Hurd, Brown, Silva, and Kelly.  *Id.*

24  Plaintiff further argues that he exhausted his claims against defendant Stovall and against

25  defendants Hurd, Brown, Silva, and Kelly through the "add-on" allegations he included in

26  seeking first and second level review of Log No. HDSP-31-09-14276.  *Id.*

As summarized above, the PLRA requires proper exhaustion.  In California, that means filing a grievance and following the proper procedures to see that grievance through the third level of review.  Plaintiff points to no authority, and the undersigned is aware of none, holding that a prisoner may forego the grievance system simply because he participated in a use of force interview.  Here, the relevant grievances address solely defendant Dunham's conduct and plaintiff's dissatisfaction with his medical treatment for his injuries.  Plaintiff's allegations that defendant Stovall did not ask him if he was suicidal and was not authorized to clear him to return to his cell and that unidentified officers used excessive force against him, included solely in seeking further review of his appeal regarding defendant Dunham, did not suffice to initiate a grievance against those defendants, much less follow all the steps necessary to exhaust plaintiff's claims against them.  As plaintiff was informed by the second level reviewer, to address his claims of staff misconduct, plaintiff should have filed a separate grievance.

As to defendant Krause, plaintiff has made no argument that he did, in fact, exhaust his claims against him.

As plaintiff has produced no evidence showing proper exhaustion of his claims against defendants Stovall, Krause, Hurd, Brown, Silva, and Kelly, and plaintiff has not attempted to argue that he should be excused from the exhaustion requirement, plaintiff's claims against these defendants should be dismissed without prejudice.

## III.   The Motion for Summary Judgment

### A.   Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

1    *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

2    motion asks whether the evidence presents a sufficient disagreement to require submission to a

3    jury.

4            The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

5    or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

6    "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

7    trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

8    (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

9    under summary judgment practice, the moving party bears the initial responsibility of presenting

10   the basis for its motion and identifying those portions of the record, together with affidavits, if

11   any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

12   U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

13   party meets its burden with a properly supported motion, the burden then shifts to the opposing

14   party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

15   *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

16           A clear focus on where the burden of proof lies as to the factual issue in question is

17   crucial to summary judgment procedures.  Depending on which party bears that burden, the party

18   seeking summary judgment does not necessarily need to submit any evidence of its own.  When

19   the opposing party would have the burden of proof on a dispositive issue at trial, the moving

20   party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

21   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

22   which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

23   24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

24   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

25   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

26   should be entered, after adequate time for discovery and upon motion, against a party who fails

1   to make a showing sufficient to establish the existence of an element essential to that party's

2   case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

3   circumstance, summary judgment must be granted, "so long as whatever is before the district

4   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

5   satisfied."  *Id.* at 323.

6        To defeat summary judgment the opposing party must establish a genuine dispute as to a

7   material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

8   that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S.

9   at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

10  law will properly preclude the entry of summary judgment.").  Whether a factual dispute is

11  material is determined by the substantive law applicable for the claim in question.  *Id.*  If the

12  opposing party is unable to produce evidence sufficient to establish a required element of its

13  claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning

14  an essential element of the nonmoving party's case necessarily renders all other facts

15  immaterial."  *Celotex*, 477 U.S. at 322.

16       Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

17  the court must again focus on which party bears the burden of proof on the factual issue in

18  question.  Where the party opposing summary judgment would bear the burden of proof at trial

19  on the factual issue in dispute, that party must produce evidence sufficient to support its factual

20  claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

21  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

22  or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

23  for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

24  demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

25  that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,

26  477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

1    The court does not determine witness credibility.  It believes the opposing party's

2    evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

3    *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

4    proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

5    *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J.,

6    dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts

7    at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

8    (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational

9    trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,

10   475 U.S. at 587 (citation omitted); *Celotex.*, 477 U.S. at 323 (If the evidence presented and any

11   reasonable inferences that might be drawn from it could not support a judgment in favor of the

12   opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any

13   genuine dispute over an issue that is determinative of the outcome of the case.

14   Concurrent with the instant motion, defendant advised plaintiff of the requirements for

15   opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Dckt. No. 35 at

16   3-4; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th

17   Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d

18   409 (9th Cir. 1988).

19   **B.    Analysis**

20   Because plaintiff's claims against defendants Stovall, Krause, Hurd, Brown, Silva, and

21   Kelly must be dismissed for failure to exhaust administrative remedies, the court need only

22   consider the motion for summary judgment as it pertains to the remaining defendant, defendant

23   Dunham.  Plaintiff alleges that Dunham was deliberately indifferent to his serious medical needs

24   when he discontinued plaintiff's prescription for Wellbutrin and did not wean him off this drug,

25   and did not adequately respond to plaintiff's suicidal feelings.  Dunham argues that he was not

26   deliberately indifferent because another doctor discontinued the prescription.  Dunham also

asserts that he could not have re-instated the prescription because Wellbutrin had been removed from the prison formulary.  Dunham also asserts that he offered plaintiff alternative medications. Dckt. No. 35-1 at 6.

The Eighth Amendment of the U.S. Constitution protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To succeed on an Eighth Amendment claim predicated on the denial of medical care, a plaintiff must establish that he had a serious medical need and that the defendant's response to that need was deliberately indifferent.  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical need exists if the failure to treat plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  *Jett*, 439 F.3d at 1096.  An officer has been deliberately indifferent if he was (a) subjectively aware of the serious medical need and (b) failed to adequately respond.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  Deliberate indifference may be manifested by a prison official's intentional interference with a prisoner's medical treatment.  *Jett*, 439 F.3d at 1096.

Defendant Dunham essentially concedes for the purposes of the motion for summary judgment that plaintiff suffered from a serious medical need (psychiatric illness).  Dunham argues, however, that his response to that medical need was not deliberately indifferent because he himself did not discontinue plaintiff's Wellbutrin, he could not continue the prescription, and he offered plaintiff alternative medications.  Plaintiff responds that it is irrelevant who actually discontinued the prescription because Dunham was obliged to reasonably respond to plaintiff's suicidal feelings and need to be weaned off the Wellbutrin and Dunham failed to do so.  Dckt. No. 41 at 2.

On the evidence before the court, plaintiff has raised a triable issue of fact as to whether Dunham's decision not to re-prescribe Wellbutrin to plaintiff, not to provide plaintiff with some treatment for Wellbutrin withdrawal, and not to respond more cautiously to plaintiff's professed suicidal feelings were adequate responses to plaintiff's mental illness.  First, plaintiff has pointed to evidence showing that the removal of Wellbutrin from the formulary did not mean that Dr. Dunham could not prescribe it to plaintiff; instead it merely meant that Dr. Dunham would have to submit a "yearly non-formulary renewal" request.  *Id.* at 5; Dckt. No. 35-4, Decl. of Def. Dunham at ¶ 10 ("In 2009, it was my understanding that Buproprion [Wellbutrin] was a non-formulary medication requiring yearly completion of a non-formulary request that needed to be reviewed and approved by the Senior Psychiatrist to continue receiving the medication."). Second, plaintiff has declared that the alternative medication offered by defendant Dunham was not adequate, as plaintiff had taken the medication previously and could not tolerate the side effects.  Lastly, defendant Dunham has not responded at all to plaintiff's allegations that he suffered withdrawal symptoms from being abruptly taken off the Wellbutrin and that Dunham failed to treat him for those symptoms, or that Dunham did not reasonably respond to plaintiff's professed desire to kill himself.

Because plaintiff's evidence raises triable issues of material fact concerning whether defendant Dunham responded reasonably to plaintiff's serious medical needs, summary judgment in favor of defendant Dunham should be denied.

## IV.    Order and Recommendation

For all of the above reasons, it is hereby ORDERED that the Clerk of the Court is directed to randomly assign this case to a District Judge.

////

////

////

////

14

1      Further, it is RECOMMENDED that:

2      1.  The August 7, 2012 motion to dismiss filed by defendants Stovall, Krause, Hurd,

3  Brown, Silva, and Kelly (Dckt. No. 38) be granted and plaintiff's claims against those

4  defendants dismissed without prejudice for failure to exhaust administrative remedies; and

5      2.  The August 7, 2012 motion for summary judgment filed by defendants (Dckt. No. 35)

6  be denied.

7      These findings and recommendations are submitted to the United States District Judge

8  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

9  after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

12  within the specified time may waive the right to appeal the District Court's order. *Turner v.*

13  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

14  Dated:  March 22, 2013.

15

16                          EDMUND F. BRENNAN

17                          UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26